# EXHIBIT B

# Case Summary

**Case Number:** MID L-003792-22

**Case Caption:**  Ukpere Susan  Vs Chick-Fil-A

| | | |
|---|---|---|
| **Court:**  Civil Part | **Venue:**  Middlesex | **Case Initiation Date:**  08/01/2022 |
| **Case Type:**  Tort-Other | **Case Status:**  Active | **Jury Demand:**  6 Jurors |
| **Case Track:**  2 | **Judge:**  Daniel H Brown | **Team:**  4 |
| **Original Discovery End Date:** | **Current Discovery End Date:** | **# of DED Extensions:**  0 |
| **Original Arbitration Date:** | **Current Arbitration Date:** | **# of Arb Adjournments:**  0 |
| **Original Trial Date:** | **Current Trial Date:** | **# of Trial Date Adjournments:**  0 |
| **Disposition Date:** | **Case Disposition:**  Open | **Statewide Lien:** |

**Plaintiffs**
**Susan  Ukpere**

| | | |
|---|---|---|
| **Party Description:** Individual | | **Attorney Name:** Rachel Nicole Dapeer |
| **Address Line 1:** | **Address Line 2:** | **Attorney Bar ID:** 039272011 |
| **City:** | **State:** NJ | **Zip:** 00000 | **Phone:** |
| **Attorney Email:** RACHEL@DAPEER.COM | | |

**Defendants**
**Chick-Fil-A**

| | | |
|---|---|---|
| **Party Description:** Business | | **Attorney Name:** |
| **Address Line 1:** 820 Bear Tavern Rd, Suite 305 | **Address Line 2:** | **Attorney Bar ID:** |
| **City:** Trenton | **State:** NJ | **Zip:** 08628 | **Phone:** |
| **Attorney Email:** | | |

**Case Actions**

| Filed Date | Docket Text | Transaction ID | Entry Date |
|---|---|---|---|
| 08/01/2022 | Complaint with Jury Demand for MID-L-003792-22 submitted by DAPEER, RACHEL NICOLE, DAPEER LAW PA on behalf of SUSAN UKPERE against CHICK-FIL-A | LCV20222797228 | 08/01/2022 |
| 08/02/2022 | TRACK ASSIGNMENT Notice submitted by Case Management | LCV20222799902 | 08/02/2022 |
| 08/10/2022 | ACKNOWLEDGEMENT OF SERVICE submitted by DAPEER, RACHEL, NICOLE of DAPEER LAW PA on behalf of SUSAN  UKPERE against CHICK-FIL-A | LCV20222895590 | 08/10/2022 |

# Civil Case Information Statement

## Case Details: MIDDLESEX | Civil Part Docket# L-003792-22

**Case Caption:** UKPERE SUSAN  VS CHICK-FIL-A

**Case Initiation Date:** 08/01/2022

**Attorney Name:** RACHEL NICOLE DAPEER

**Firm Name:** DAPEER LAW PA

**Address:** 3331 SUNSET AVE

OCEAN NJ 07712

**Phone:** 3056105223

**Name of Party:** PLAINTIFF : Ukpere, Susan

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** TORT-OTHER

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Susan Ukpere? NO**

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** YES  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

08/01/2022
Dated

/s/ RACHEL NICOLE DAPEER
Signed

MIDDLESEX VICINAGE CIVIL DIVISION
P O BOX 2633
56 PATERSON STREET
NEW BRUNSWICK     NJ 08903-2633

                              TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (732) 645-4300
COURT HOURS  8:30 AM - 4:30 PM

                    DATE:  AUGUST 01, 2022
                    RE:    UKPERE SUSAN  VS CHICK-FIL-A
                    DOCKET: MID L -003792 22

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.

     DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON DANIEL H. BROWN

      IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     004
AT:  (732) 645-4300 EXT 88905.

      IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
      PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:
                         ATT: RACHEL N. DAPEER
                         DAPEER LAW PA
                         3331 SUNSET AVE
                         OCEAN          NJ 07712


ECOURTS

**DAPEER LAW, P.A.**
Rachel Edelsberg, Esq.
Jersey Bar No. 039272011
3331 Sunset Avenue
Ocean, New Jersey 07712
305-610-5223

*Counsel for Plaintiff and the Proposed Class*

---

|  |  |  |
|---|---|---|
| **SUSAN UKPERE**, *individually, and on behalf of all others similarly situated,* | : | SUPERIOR COURT OF NEW JERSEY |
|  | : | LAW DIVISION |
|  | : | MIDDLESEX COUNTY |
| Plaintiff, | : |  |
|  | : | DOCKET NO. |
| v. | : |  |
|  | : | **CLASS ACTION** |
| **CHICK-FIL-A, INC.,** | : |  |
|  | : | **COMPLAINT** |
| Defendant. | : |  |
|  | : | **JURY TRIAL DEMANDED** |

Plaintiff SUSAN UKPERE, individually and on behalf of all others similarly situated, complain and allege upon information and belief based, among other things, upon the investigation made by Plaintiff and through her attorneys as follows:

<u>**NATURE OF ACTION**</u>

1.      This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant Chick-fil-A, Inc. ("Defendant" or "Chick-fil-A"), arising from its deceptive and untruthful promises to provide FREE or flat fee, low-price delivery on food deliveries ordered through is app and website.

2.      Since the beginning of the COVID-19 pandemic, Chick-fil-A has moved aggressively into the food delivery business, exploiting an opportunity presented by Americans' reduced willingness to leave their homes.  To appeal to consumers in a crowded food delivery marketplace during the national crisis, early in the pandemic Chick-fil-A began promising its

customers "FREE DELIVERY" or low-price delivery in its mobile application and on its website, usually in the amount of $2.99 or $3.99.

3.      These representations, however, are false, because that is not the true cost of having food delivered by Chick-fil-A. In fact, Chick-fil-A imposes hidden delivery charges on its customers in addition to the low "Delivery Fee" represented in its app and on its website.

4.      On delivery orders only, Chick-fil-A secretly marks up food prices for delivery orders by a hefty 25-30%. In other words, the identical order of a 30-count chicken nuggets costs approximately $5-6 more when ordered for delivery than when ordered via the same mobile app for pickup, or when ordered in-store.

5.      This hidden delivery upcharge makes Chick-fil-A's promise of FREE or low-cost delivery patently false.  The true delivery costs are obscured, as described above, and far exceed its express representation that its "Delivery Fee" is FREE or a flat fee of only $2.99 or $3.99.

6.      By falsely marketing a FREE or low-cost delivery charge, Chick-fil-A deceives consumers into making online food purchases they otherwise would not make.

7.      Worse, Chick-fil-A was aware of consumer confusion regarding the secret menu upcharge and knew consumers were and would be deceived by hidden menu price markups of which they were not aware. Nonetheless, Chick-fil-A never informed its consumers of the menu price markup.

8.      Upon information and belief, Chick-fil-A adopted its pricing strategy because it believed that consumers would make more purchases if Chick-Fil-A misrepresented the true cost of delivery by offering FREE or low-cost delivery, then secretly inflating menu prices on delivery orders only.

9.      Chick-fil-A intentionally deceived its customers regarding the true cost of its

delivery service, hiding its delivery charges in menu price markups it never disclosed to its customers. Chick-fil-A did this because it was unhappy with the profitability and sales generated by truthful advertisements.

10.     In fact, when Chick-fil-A first began offering delivery services in 2019, it offered a fair, truthful and transparent delivery fee of $4.99 *without* secretly marking up menu prices in any way on delivery orders. Later, however, Chick-fil-A decided that it could increase the profitability and sales generated by its delivery service by lying about its delivery charges to its customers.

11.     Specifically, early in the national Covid-19 crisis, Chick-fil-A saw an opportunity for exploitation.  It claimed to *reduce* its delivery fee to FREE, $2.99 or $3.99 in order lure customers into making delivery purchases from Chick-fil-A in a crowded food delivery marketplace. But unbeknownst to those customers, at the same time Chick-fil-A secretly raised its menu prices on delivery orders only in order to cover the costs of delivery and profit—without once disclosing the manipulation to customers.

12.     Chick-fil-A continues to misrepresent the nature of the delivery charges assessed on the Chick-fil-A mobile application and the website, by issuing in-app and online marketing materials that fail to correct reasonable understandings of its FREE or low-cost delivery promises, and that misrepresent the actual costs of the delivery service.

13.     Specifically, Chick-fil-A omits and conceals material facts about the Chick-fil-A delivery service, never once informing consumers in any disclosure, at any time, that the use of the delivery service causes a substantial increase in food prices.

14.     Hundreds of thousands of Chick-fil-A customers like Plaintiff has been assessed hidden delivery charges they did not bargain for.

15.     Consumers like Plaintiff reasonably understand Chick-fil-A's express "Delivery Fee" representation to disclose the total additional cost they will pay as a result of having their food delivered, as opposed to ordering online and picking up food in person, or ordering and picking up food in person.

16.     By unfairly obscuring its true delivery costs, Chick-fil-A deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true delivery charges. For example, other restaurants such as Del Taco and El Pollo Loco both offer delivery services through their app and website.  But unlike Chick-fil-A's current practice, Del Taco and El Pollo Loco fairly and prominently represent their true delivery charges—just as Chick-fil-A used to do.

17.     Plaintiff seeks damages and, among other remedies, injunctive relief that fairly allows consumers to decide whether they will pay Chick-fil-A's delivery mark-ups.

## PARTIES

18.     Plaintiff Susan Ukpere is a citizen of the State of New York who resides in Bronx, New York.

19.     Defendant, Chick-fil-A Inc. is incorporated in Georgia and maintains its principal business offices in Atlanta, Georgia. Chick-fil-A Inc., is engaged in the business of fast food and food delivery to consumers, including Plaintiff and members of the putative Class. Chick-fil-A operates stores throughout New Jersey and nationwide.

## JURISDICTION AND VENUE

20.     Plaintiff is informed and believes that the State of New Jersey has personal jurisdiction over the Defendant named in the action because Defendant is a corporation authorized to conduct and does conduct business in this state. Defendant is registered to do sufficient business with sufficient minimum contacts in New Jersey, and/or otherwise intentionally avails itself of the

New Jersey market through the ownership and operation of approximately 40 store locations throughout New Jersey, including in the County of Middlesex, which has caused both obligations and liability of Defendant to arise in the County of Middlesex.

21.     Venue is proper in this Court because a substantial portion of the conduct at issue in this lawsuit took place and had an effect in this County.

## COMMON FACTUAL ALLEGATIONS

**A.     Food Delivery Services Increase in Popularity, and then Explode in Popularity During the Pandemic.**

22.     In 2018, the online food delivery industry was an astounding $82 billion in gross revenue and projected to exceed $200 billion by 2025.[1]

23.     US Foods reports that the average American consumer has two food delivery apps installed on their mobile phone and uses those apps three times per month.[2]

24.     The online food delivery industry predominately influences the country's most financially vulnerable populations. A nationwide research study conducted by Zion & Zion reveals that the largest user markets for online delivery food services are the young and the poor.[3] During a 90-day timeframe, 63% of consumers between the ages of 18 and 29 used a multi-restaurant delivery website or app service, followed by 51% of consumers between the ages of 30 to 44.[4] The

---

[1] *See* Frost & Sullivan, *$9.6 Billion in Investments Spurring Aggressive Expansion of Food Delivery Companies,* October 25, 2019, accessible at https://ww2.frost.com/news/press-releases/9-6-billion-in-investments-spurring-aggressive-expansion-of-food-delivery-companies/, last accessed January 19, 2021.

[2] *See* US Foods, *New Study Shows What Consumers Crave in a Food Delivery Service,* 2019, accessible at https://www.usfoods.com/our-services/business-trends/2019-food-delivery-statistics.html, last accessed January 19, 2021.

[3] *See* Aric Zion and Thomas Hollman, Zion & Zion Research Study, *Usage and Demographics of Food Delivery Apps,* accessible at https://www.zionandzion.com/research/food-delivery-apps-usage-and-demographics-winners-losers-and-laggards/, last accessed January 19, 2021.

[4] *Id.*

study also demonstrated that the "less income a consumer earns, the more likely the consumer is to take advantage of restaurant delivery services," as those earning less than $10,000 per year ordered online delivery the most (51.6%).[5]

25.     Put plainly, the allure for online food delivery services has historically been based upon pure convenience. A 2019 Gallup study of third-party delivery services companies like GrubHub, DoorDash, and Uber Eats reported 72% of customers order online food delivery because they don't want to leave their house; 50% so that they can continue with their ongoing activities; and 41% to avoid bad weather.[6]

26.     According to data compiled by Yelp, food delivery orders have *doubled* since the COVID-19 outbreak began.[7]

27.     The arrival of the unprecedented COVID-19 pandemic escalated the value of online food delivery services from one of pure convenience to that of a comforting necessity for many consumers who are sick, in a high-risk population group for COVID-19, or simply do not feel safe to leave their homes and venture out into the public to purchase food during quarantine.

28.     In its 2019 Economic Report conducted by research firm Technomic, DoorDash reported that 86% of customers agreed that DoorDash played an important role in helping them access food during the pandemic and 77% of consumers increased their use of third-party delivery

---

[5] *Id.*

[6] *See* Sean Kashanchi, Gallup, *Third-Party Delivery Will Grow; Is Your Restaurant Ready?,* May 6, 2019, accessible at https://www.gallup.com/workplace/248069/third-party-delivery-grow-restaurant-ready.aspx, last accessed January 19, 2021.

[7] *See* Tal Axelrod, The Hill, *Yelp: Delivery and take-out twice as popular as usual amid coronavirus,* March 20, 2020, available at https://thehill.com/policy/technology/488749-yelp-delivery-and-take-out-twice-as-popular-as-usual-amid-coronavirus, last accessed January 19, 2021.

services during this time.[8] Indeed, amidst the uncertainty of the novel virus, 68% of consumers now view ordering food online for delivery as the safer option.[9]

29.     The era of COVID-19 undoubtedly caused a significant revenue boom for third party delivery services. SEC filings indicate that the top four U.S. food-delivery apps (DoorDash, Uber Eats, GrubHub, and Postmates) collectively experienced a *$3 billion increase* in revenue in just two quarters, April through September, following the enactment of shelter-in-place restrictions throughout the nation.[10]

30.     The ramp up in utilization of food delivery services also had a massive positive impact on restaurant owners who were quickly on the brink of facing permanent closures during lockdown: 67% of restaurant operators said DoorDash was crucial to their business during COVID-19 and 65% say they were actually able to *increase* profits during this time because of DoorDash.

31.     In the wake of the food delivery surge, Consumer Reports highlighted the need for fee transparency for consumers who use these apps and services.[11] A research team investigated food delivery companies and the report measured their compliance with new rules regarding fees enacted in seven US cities aimed at protecting consumers and businesses during the pandemic. It

---

[8] *See* Technomic and DoorDash, 2019 Economic Impact Report, *The Impact of DoorDash on Economic Activity and Restaurant Resilience,* available at https://doordashimpact.com/media/2019-Economic-Impact-Report.pdf, last accessed January 19, 2021.

[9] *Id.*

[10] *See* Levi Sumagaysay, Market Watch, *The pandemic has more than doubled food-delivery apps' business. Now what?,* last updated November 27, 2020, available at https://www.marketwatch.com/story/the-pandemic-has-more-than-doubled-americans-use-of-food-delivery-apps-but-that-doesnt-mean-the-companies-are-making-money-11606340169, last accessed January 19, 2021.

[11] *See* Consumer Reports, *Collecting Receipts: Food Delivery Apps & Fee Transparency,* September 29, 2020, accessible at https://digital-lab-wp.consumerreports.org/wp-content/uploads/2020/09/Food-delivery_-Report.pdf, last accessed January 19, 2021.

found that these companies continued to not comply with the new ordinances and continued to "employ design practices that obfuscate fees." They concluded that "[c]onsumers deserve to have informed choices to understand what they are being charged for *and* how their dollars spent impacts the restaurants they support and patronize in their communities."

**B.**     **Chick-fil-A's App and Website Fails to Bind Users to Any Terms of Service.**

32.     When a consumer downloads the Chick-fil-A app, or uses the Chick-fil-A website, he may create an account in order to place an order for delivery or pickup.

33.     In order to do so, a user enters in a name and contact information.

34.     While the account creation screen contains a small hyperlink to view Chick-fil-A's Terms of Service and Privacy Notice, users are not required to affirmatively consent to such terms, such as by clicking or checking a box.

**C.**     **Prior to the Pandemic, Chick-fil-A Offered a $4.99 Delivery Fee with No Menu Price Markup, Then Discovered It Could Increase Sales by Shifting Delivery Costs to Hidden Menu Upcharges**

35.     Chick-fil-A first began offering delivery services in 2019. At that time, it offered a truthful and transparent delivery fee of $4.99 *without* secretly marking up menu prices in any way on delivery orders.

36.     Specifically, it promised "Delivery Fee: $4.99" during the checkout process and did not mark-up menu prices on delivery orders. This was a clear promise that the total, marginal cost of having food delivered versus picking it up in store was represented by the $4.99 Delivery Fee.

37.     However, Chick-fil-A was not content with the profitability and sales generated by its delivery service, and decided that it could increase the profitability and sales generated by its delivery service by lying about its delivery charges to its customers.

38.     Chick-fil-A was aware of consumer confusion regarding the secret menu upcharge. Upon information and belief, Defendant was or should have been aware that consumers were and would be deceived by hidden menu price markups. Nonetheless, Chick-fil-A never informed its consumers of the menu price markup.

39.     Chick-fil-A intended for consumers to make more purchases as a result of Chick-Fil-A lowering its delivery fee and raising menu prices in order to cover delivery costs and profit on the delivery service.

40.     So that is precisely what Defendant did during the early days of the Covid-19 pandemic: it *lowered* its Delivery Fee, sometimes to FREE, and *raised* its menu prices by 25%-30% on delivery orders only.

41.     Because it is well known that American consumers prefer FREE or low-cost delivery costs, Chick-fil-A made an intentional decision to absorb delivery charges into hidden menu upcharges.

42.     Instead of fairly and transparently disclosing this change to its customers—who were already under tremendous stress from the pandemic—Chick-fil-A chose to operate in the shadows. It continued to make a clear promise that the total, marginal cost of having food delivered versus picking it up in store was represented by a new FREE or $2.99 or $3.99 Delivery Fee.

43.     But because it secretly inflated menu prices on delivery orders only, and never informed customers of this policy, it misrepresented the true cost of delivery.

44.     Chick-fil-A intentionally deceived its customers regarding the true cost of its delivery service, hiding its delivery charges in menu price markups it never disclosed to its customers.

**D.     Chick-fil-A Prominently and Plainly Represents a Flat "Delivery Fee" on its App and Website.**

45.     Beginning in the early days of the Covid-19 pandemic, Chick-fil-A began prominently featuring FREE and low-cost delivery promises on its mobile application and on its website.

46.     Such representations often are made on the home screen of the app or website, and were always made on the check-out screen of the app and website, prior to the finalization of an order.  On that screen, Chick-fil-A promised a flat "Delivery Fee" that was FREE, $2.99 or $3.99.

47.     As an example, for supposed "FREE DELIVERY" orders, the order finalization screen states:

> Subtotal: [representing the cost of the food selected]
>
> Tax: [representing sales tax]
>
> Delivery Fee: FREE
>
> Tip:
>
> Total:  [adding up the above]

48.     As an example, for supposed "$3.99 Delivery Fee" orders, the order finalization screen states:

> Subtotal: [representing the cost of the food selected]
>
> Tax: [representing sales tax]
>
> Delivery Fee: $3.99
>
> Tip:
>
> Total:  [adding up the above]

49.     In short, the Delivery Fee promises further the reasonable perception that such fee is what covers delivery costs.

**E.      Chick-fil-A Omits and Conceals Material Facts About the Costs of the Chick-fil-A Delivery Service.**

50.      But those disclosures were false and misleading, and the delivery charge was not, in fact, FREE or a flat fee of $2.99 or $3.99.

51.      Chick-fil-A furtively marked up the cost of food reflected in the "Subtotal"— adding a hefty 25-30% to the cost of the food items ordered for delivery. Chick-fil-A did not and does not make similar markups for identical food items ordered via the same app or website, where such items are ordered for pickup instead of delivery.

52.      Chick-fil-A omitted this material fact from its app and website disclosures, never informing users of this secret markup.

53.      Worse, Chick-fil-A designed its app to make it *impossible* for consumers to catch its hidden menu price inflation.  The company ensured that food prices were only displayed on the app or website *after* a customer chose delivery or pickup, ensuring delivery customers could not see the price inflation.

54.      This secret markup—which Chick-fil-A *only* applies to delivery orders—is a hidden delivery fee. This renders false Chick-fil-A's promise of a FREE or a flat, low-cost delivery fee of $2.99 or $3.99, which is made repeatedly in the app and the website, and then again in the "Delivery Fee" line item on the order screen.

55.      This secret markup was specifically designed to cover the costs of delivering food and profit on that delivery. It was, in short, exclusively a charge for using Chick-fil-A's delivery service.

56.      In short, the "Delivery Fee" is not actually $2.99 or $3.99. The actual "Delivery Fee"—the extra charge for having food delivered as opposed to picking it up—is the listed "Delivery Fee" *plus* the hidden food markup applied exclusively to delivery orders.

57.     Chick-fil-A does not inform consumers the true costs of its delivery service and it misrepresents its "Delivery Fee" as $2.99 or $3.99, when in fact that cost is actually much higher.

**F.      Other Restaurant Industry Actors Disclose Delivery Fees Fairly and Transparently—And Chick-fil-A Did So Before it Changed its Practice.**

58.     By unfairly obscuring its true delivery costs, Chick-fil-A deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true delivery charges. For example, other restaurants like Del Taco and El Pollo Loco both offer delivery services through their app and website.  But unlike Chick-fil-A, Del Taco and El Pollo Loco fairly and prominently represent their true delivery charges.

59.     For example, Del Taco does not mark-up food charges for delivery orders through its app. Instead, for delivery orders its ordering screen presents the following:

Subtotal:

Tax:

Delivery Charge:

Tip:

60.     All line-item amounts are **identical** for delivery and pick-up orders, except for the plainly and fairly disclosed delivery charge—allowing consumers to understand the true cost of the delivery service.

61.     Similarly, El Pollo Loco does not mark-up food charges for delivery orders through its app. Instead, for delivery orders its ordering screen presents the following:

Subtotal:

Delivery Charge:

Tax:

62.     All line-item amounts are **identical** for delivery and pick-up orders, except for the

plainly and fairly disclosed delivery charge—allowing consumers to understand the true cost of the delivery service.

63.     As described above, this is exactly what Chick-fil-A itself did prior to the Covid-19 pandemic.

64.     Lastly, although Instacart, the grocery delivery service, does mark-up item charges for delivery orders made through its app, it provides an express warning to consumers that the item prices listed on its app are "higher than in-store prices." Instacart's clear disclaimer is made visible to consumers before they place their orders and allows consumers to understand that they are paying a higher price for utilizing the delivery service, as opposed to what they would pay had they purchased the same items in-store.

**G.     Plaintiff's Experience**

65.     From within New Jersey, Plaintiff Susan Ukpere made an online purchase of food from the Chick-fil-A restaurant located in Woodbridge, New Jersey on August 29, 2020, in the total amount of $26.30.

66.     Prior to placing her order, the Chick-fil-A website stated that the Delivery Fee was $2.99.

67.     However, the cost of food ordered by Plaintiff Ukpere bore a hidden delivery fee markup. To illustrate, Chick-fil-A charged Plaintiff Ukpere $11.05 for a spicy deluxe sandwich meal.

68.     Upon information and belief, the same item would have cost Plaintiff Ukpere 25-30% less than what she had paid had she picked it up from the Chick-fil-A location instead.

69.     Plaintiff Ukpere would not have made the purchase had she known the Chick-fil-A delivery fee was not in fact $2.99.

70.     If she had known the true delivery fee, she would have chosen another method for receiving food from Chick-fil-A or ordered from another provider.

71.     On November 4, 2020 and February 17, 2021, Plaintiff Ukpere placed similar orders of food for delivery from the Chick-fil-A restaurant located in Woodbridge, New Jersey, and in each instance, Chick-fil-A represented the Delivery Fee as $2.99. However, in each instance, the cost of food ordered by Plaintiff Ukpere bore a hidden delivery fee markup of 25-30% more than what she would have paid for the identical items had she picked them up from the Chick-fil-A location instead. Plaintiff Ukpere would not have made these purchases had she known the Chick-fil-A delivery fee was not in fact $2.99.

## **CLASS ALLEGATIONS**

72.     Pursuant to New Jersey Rules of Court 4:32, Plaintiff brings this action on behalf of herself and Class of similarly situated persons defined as follows:

> All persons in New Jersey who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered food delivery through the Chick-fil-A mobile app or website, and were assessed higher delivery charges than represented.

73.     Excluded from the Class are Defendant, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

74.     **Numerosity**:  At this time, Plaintiff does not know the exact size of the Class; however, due to the nature of the trade and commerce involved, Plaintiff believes that the Class

members are well into the thousands, and thus are so numerous that joinder of all members is impractical.  The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

75.     **Commonality**:  There are questions of law or fact common to the Class, which include, but are not limited to the following:

a.      Whether during the class period, Defendant deceptively represented Delivery Fees on food deliveries ordered through the Chick-fil-A website and mobile app;

b.      Whether Defendant's alleged misconduct misled or had the tendency to mislead consumers;

c.      Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

d.      Whether Defendant's alleged conduct constitutes violations of the laws asserted;

e.      Whether Plaintiff and members of the Class were harmed by Defendant's misrepresentations;

f.      Whether Plaintiff and the Class have been damaged, and if so, the proper measure of damages; and

g.      Whether an injunction is necessary to prevent Defendant from continuing to deceptively represent low-price, flat delivery fees on food deliveries ordered through the Chick-fil-A website and mobile app.

76.     **Typicality**:  Like Plaintiff, many other consumers ordered food for delivery from Chick-fil-A's website or mobile app, believing delivery to be the flat fee represented based on

Defendant's representations. Plaintiff's claims are typical of the claims of the Class because Plaintiff and each Class member was injured by Defendant's false representations about the true nature of the delivery fee. Plaintiff and the Class have suffered the same or similar injury as a result of Defendant's false, deceptive and misleading representations. Plaintiff's claims and the claims of members of the Class emanate from the same legal theory, Plaintiff's claims are typical of the claims of the Class, and, therefore, class treatment is appropriate.

77.     **Adequacy of Representation**:  Plaintiff is committed to pursuing this action and has retained counsel competent and experienced in prosecuting and resolving consumer class actions.  Plaintiff will fairly and adequately represent the interests of the Class and does not have any interests adverse to those of the Class.

78.     **The Proposed Class Satisfy the Prerequisites for Injunctive Relief**. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Plaintiff remains interested in ordering food for delivery through Chick-fil-A's website and mobile app; there is no way for her to know when or if Defendant will cease deceptively misrepresenting the cost of delivery.

79.     Specifically, Defendant should be ordered to cease from representing their delivery service as a low-price, flat delivery fee and to disclose the true nature of their delivery fee.

80.     Defendant's ongoing and systematic practices make declaratory relief with respect to the Class appropriate.

81.     **The Proposed Class Satisfy the Prerequisites for Damages**. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.  The likelihood that individual members of the Class will prosecute separate

actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

### FIRST CLAIM FOR RELIEF
**Violation of New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.***
**(Asserted on Behalf of the Class)**

82.     Plaintiff repeats and re-alleges the above allegations as if fully set forth herein.

83.     This cause of action is brought under New Jersey's Consumer Fraud Act, § 56:8-1, *et seq.*, (the "NJCFA").

84.     The NJCFA protects consumers from "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise…" N.J. Stat. Ann. § 56:8-2.

85.     Chick-fil-A's food items constitute "merchandise" within the definition of the NJCFA. § 56:8-1(c).

86.     Chick-fil-A violated the NJCFA by knowingly misrepresenting on its mobile app and website that it provides a flat, low-cost delivery fee of $2.99 or $3.99 for food orders, when, in reality, it hides delivery charges through hidden food markups applied exclusively to delivery orders.

87.     Defendant's affirmative misrepresentations and material omissions regarding the true nature of Chick-fil-A's Delivery Fee constitutes an unlawful practice under the NJCFA.

88.     Plaintiff and the Class had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose.

89.     As a direct and proximate result of Defendant's deceptive, misleading, and unlawful acts and practices, Plaintiff and the Class suffered an ascertainable loss in that they paid a higher delivery charge than they had bargained for. Accordingly, they have suffered and will continue to suffer actual damages.

90.     Plaintiff and the Class are entitled to relief including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

**SECOND CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Asserted on behalf of the Class)**

91.     Plaintiff repeats and re-alleges the above allegations as if fully set forth herein.

92.     To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

93.     Defendant unfairly, deceptively, unjustly, and/or unlawfully seized and accepted said benefits which, under the circumstances, would be unjust to allow Defendant to retain.

94.     Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff on behalf of herself and the Class seeks judgment in an amount to be determined at trial, as follows:

(a)     For an order enjoining Defendant from continuing the unlawful practices set forth above;

(b)     For declaratory and injunctive relief as set forth above;

(c)     For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(d)     For compensatory damages according to proof;

(e)      For punitive damages according to proof;

(f)      For reasonable attorneys' fees and costs of suit;

(g)      For pre-judgment interest; and

(h)      Awarding such other and further relief as this Court deems just, proper and

equitable.

**DESIGNATION OF TRIAL COUNSEL**

**JURY TRIAL DEMAND**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this

Class Action Complaint that are so triable, pursuant to R. 1:8-2(b) and 4:35-1(a).

**CERTIFICATION OF NO OTHER ACTIONS**

Pursuant to R. 4:5-1, I hereby certify to the best of my knowledge that the matter in

controversy is not the subject of any other action pending in any court or the subject of a pending

arbitration proceeding, nor is any other action or arbitration proceeding contemplated. I further

certify that I know of no party who should be joined in the action at this time.


Dated:  August 1, 2022                                    **DAPEER LAW, P.A.**
                                                          */s/ Rachel Edelsberg*
                                                          Rachel Edelsberg, Esq.
                                                          New Jersey Bar No. 039272011
                                                          3331 Sunset Avenue
                                                          Ocean, New Jersey 07712
                                                          Telephone: 305-610-5223
                                                          rachel@dapeer.com

                                                          Scott Edelsberg*
                                                          Christopher Gold*
                                                          **EDELSBERG LAW, PA**
                                                          20900 NE 30th Ave, Suite 417
                                                          Aventura, Florida 33180
                                                          Telephone: 305-975-3320
                                                          scott@edelsberglaw.com
                                                          chris@edelsberglaw.com

Andrew J. Shamis*
**SHAMIS & GENTILE, P.A.**
14 NE First Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299
ashamis@shamisgentile.com

Jeffrey D. Kaliel*
**KALIELGOLD PLLC**
Jkaliel@kalielpllc.com
1100 15th St NW, 4th Floor
Washington DC, 20005
Telephone: (202) 350-4783

Sophia Goren Gold*
**KALIELGOLD PLLC**
sgold@kalielgold.com
950 Gilman Avenue, Suite 200
Berkeley, CA 94710
Telephone: (202) 350-4783

*Pro Hac Vice forthcoming*

*Counsel for Plaintiff and the Proposed Class*

**SUMMONS**

Attorney(s) _Rachel Edelsberg_

Office Address _3331 Sunset Avenue_

Town, State, Zip Code _Ocean, New Jersey 07712_

_____

Telephone Number _305-610-5223_

Attorney(s) for Plaintiff _____

SUSAN UKPERE, individually and on

behalf of all others similarly situated

        Plaintiff(s)

     vs.

CHICK-FIL-A

_____

      Defendant(s)

# Superior Court of New Jersey

Middlesex_____ County

Law_____ Division

Docket No: _MID-L-003792-22_

# CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

    The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

                          _/s/ Rachel Edelsberg_

                          Clerk of the Superior Court

DATED: _08/01/22_

Name of Defendant to Be Served: _Chick-Fil-A, Inc._

Address of Defendant to Be Served: _820 Bear Tavern Rd, Suite 305 Trenton, NJ 08628_

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

SUPERIOR COURT OF NEW JERSEY

SUSAN UKPERE

Case No.: L-003792-22

County: Middlesex

Plaintiff,

v.

Division: Law

CHICK-FIL-A, INC.

Defendant.

WAIVER OF SERVICE OF PROCESS

TO:   Rachel Edelsberg,
Esq.

       I acknowledge receipt of your request that I waive service of process in the lawsuit of SUSAN UKPERE v. CHICK-FIL-A, INC. I have also received a copy of the complaint, two copies of this waiver, and a means by which I can return the signed waiver to you without cost to me.

       I agree to save the cost of service of process and an additional copy of the complaint in this lawsuit by not requiring that I or the entity on whose behalf I am acting be served with judicial process in the manner provided by R.4:4-1.

       If I am not the defendant to whom the notice of lawsuit and waiver of service of process was sent, I declare that my relationship to the entity or person to whom the notice was sent and my authority to accept service on behalf of such person or entity is as follows (describe relationship to person or entity and authority to accept service): I am counsel to defendant Chick-fil-A, Inc.

       I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for any objections based on a defect in the summons or in the service of the summons.

       I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if a written response is not served upon you by October 7, 2022.

DATED ON: August 9, 2022

*Derick G*

Daniel E. Gorman, Esq.
Troutman Pepper Hamilton Sanders LLP
*Attorneys for Defendant*